# ALLEN CANNING COMPANY *v.* J.D. WOODRUFF

CA 04-1364 212 S.W.3d 25

## Court of Appeals of Arkansas
### Opinion delivered September 7, 2005

238

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark*, for appellant.

*Walker, Shock, Cox & Harp, PLLC*, by: *J. Randolph Shock*, for appellee.

DAVID M. GLOVER, Judge. Appellant, Allen Canning Company, appeals the Workers' Compensation Commission's adoption of the administrative law judge's decision finding that appellee, J.D. Woodruff, suffered a compensable injury on July 7, 2003; that appellee was entitled to temporary-total disability for the period July 8-18, 2003; and that appellee's claim was not barred by the *Shippers* defense. Allen Canning asserts that there is no substantial evidence to support the Commission's finding that appellee sustained a compensable back injury while in the course and scope of his employment and that the Commission erred in finding that the *Shippers* defense was inapplicable. Woodruff cross-appeals, arguing that his period of temporary-total disability should not have ceased on July 18, 2003, but instead should continue until a date to be determined because he remained in his healing period. We affirm on direct appeal and on cross-appeal.

The standard of review in workers' compensation cases is well-settled. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm the decision if it is supported by

substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra.* It is the Commission's function to determine witness credibility and the weight to be afforded to any testimony; the Commission must weigh the medical evidence and, if such evidence is conflicting, its resolution is a question of fact for the Commission. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003). The Commission's resolution of the medical evidence has the force and effect of a jury verdict. *Jim Walters Homes v. Beard*, 82 Ark. App. 607, 120 S.W.3d 160 (2003).

Prior to his employment at Allen Canning, appellee, a forty-eight-year-old man, had an extensive history of work-related back injuries. In 1992, he injured his lumbar spine while employed by Don Youngblood as a truck driver; as a result of this compensable injury, he did not work for over one year and was assigned a permanent physical-impairment rating of nine percent to the body as a whole. Appellee also suffered two compensable back-related injuries while he was employed by Wal-Mart — first on September 28, 2001, and then on July 20, 2002. Additionally, appellee has degenerative-disc disease and small-disc herniations in multiple levels of his lumbar spine.

Following treatment for his last Wal-Mart injury, appellee's physician, Dr. Kannout, released appellee on August 19, 2002, for return to work without any restrictions. Appellee subsequently went to work for appellant. On July 7, 2003, appellee was loading one of appellant's trucks with boxes of shoestring potatoes weighing about twenty pounds each when his back began to hurt. He said that he felt fine before he began working, that he must have bent the wrong way while he was picking up a box, that he felt a pop in his lower spine, that he felt severe pain in his back, and that he also felt pain shooting halfway down his right thigh. Appellee reported the incident to the forklift driver, who went to inform the warehouse manager. Appellee continued to work until Don James, the warehouse manager, arrived about ten minutes later and told him to go to the shoestring potato "lidder" line, a job that was not as difficult. Appellee testified that he believed that he needed

medical attention, but that James did not offer to fill out an accident report at that time. Appellee worked the "lidder" line until lunchtime, when he told James that he had to go home; he did not fill out an accident report prior to leaving work.

Although he was scheduled to work the following day, appellee called Don James and told him that he was not coming to work, and he went to see Dr. Kannout. Appellee said that James said nothing about an accident report at that time, and such a report was not completed until three or four days later. Appellee said that Allen Canning never offered him medical attention nor paid for his medical visits with Dr. Kannout or for physical therapy, which appellee had to discontinue after July 18 due to a lack of money.

On July 25, 2003, appellee saw Dr. Westbrook, who had treated him during his first workers' compensation claim, complaining of back pain. He said that Dr. Westbrook gave him an ESI shot and that he had not returned to see Dr. Westbrook since that time because he had not needed him.

Appellee testified that he was always in moderate pain; that some days were worse than others; that his back injury affected the way he walked; and that if he sat, stood, or bent for too long a period, his back hurt. He said that on a good day he could lift twenty pounds comfortably, but on a bad day he did not want to get out of bed. He said that he still needed additional medical attention for his back, but he had not been able to afford it.

Appellee stated that he felt that he could return to Allen Canning in some capacity, but that Allen Canning had not provided him with any work since his injury. He also stated that he had looked for work elsewhere but had not yet found a job.

During cross-examination, appellee asserted that before coming to Allen Canning, he had only experienced slight back pain, "hardly no pain at all," and he denied experiencing any severe back pain prior to going to work for appellant. He said that he did not think that lifting and bending would cause his slight back pain to become worse because his doctor had told him that he was fine and had released him for full work with no restrictions. He admitted that he had said in his deposition that he knew before he went to work for appellant that lifting could make his back worse, but he said that he was not doing any lifting when he began working for appellant. He had only loaded trucks twice before his injury, and he did not consider loading trucks to be one of his

regular job duties. Appellee said that he did not notify anyone at Allen Canning that lifting could make his condition worse because he felt fine, and that when he completed his employment application, he was not asked if lifting would make any physical condition he had worse. In response to the employment application question that asked him to describe his general health, he said that he had checked "good," but he denied that he had answered the question "Do you have any physical or mental conditions which may limit your ability to perform certain kinds of work?" at all. At the time he completed the employment application, appellee's doctor had released him to return to full duty work without any restrictions.

Don James, appellant's warehouse manager, testified that he was informed on the morning of July 7 that appellee had a problem with his back while loading a truck. When he went to check on appellee, he said that appellee told him that it was not a big deal, that it happened "two or three times a year," and that he just had to get some pills from a doctor to relax it. James said that he could not remember when he completed the accident report, but that he thought it might have been the next day. He said that appellee had never told him he had a bad back prior to July 7, 2003, or that lifting would hurt his back, and if he had known of those limitations, he would not have had appellee loading the truck.

 In *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 464, 120 S.W.3d 150, 152-53 (2003), this court set forth the definition of a compensable injury:

> Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 1999) defines "compensable injury" as
>
> > An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.
>
> A compensable injury must be established by medical evidence supported by "objective findings." Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).

In the present case, the Commission found that appellee had sustained a compensable injury, even in light of the acknowledgment that appellee had an extensive history of work-related

low-back problems dating back to 1992 and that he suffered from degenerative-disc disease and small-disc herniations. Appellant does not argue that appellee did not suffer an injury or that it was not established by objective findings. Rather, appellant argues that it should not be responsible for appellee's injury because it was nothing more than a recurrence of his prior back injuries.

A recurrence exists when the second complication is a natural and probable consequence of a prior injury. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). In support of its argument, appellant points to appellee's numerous prior back injuries and argues that, contrary to his assertion, appellee had complained of additional back pain after August 19, 2002, because he filed an AR-C form on February 11, 2003, seeking additional medical expenses and benefits from Wal-Mart with regard to a compensable injury he suffered while employed there.

We hold that there was substantial evidence to support the Commission's finding that appellee suffered a compensable injury and that it was not a recurrence of his prior back injuries. Although acknowledging appellee's prior history of work-related back injuries, which was admittedly quite extensive, the Commission placed great weight on the fact that after appellee's last work-related injury appellee was released by Dr. Kannout without restriction to full regular-duty work as of August 19, 2002. Furthermore, the Commission obviously found appellee's testimony credible that he did not seek any additional medical treatment or take any medication other than aspirin from his release on August 19, 2002, until July 7, 2003, the date of the injury at issue in the present case. The Commission determines witness credibility, and we hold that reasonable minds could arrive at the Commission's decision that appellee had suffered a compensable injury.

Allen Canning also argues that the Commission erred in finding that the *Shippers* defense was not applicable to this case. In *Shippers Transport of Georgia v. Stepp*, 265 Ark. 365, 369, 578 S.W.2d 232, 234 (1979), our supreme court held that

> a false representation as to a physical condition in procuring employment will preclude the benefits of the Workmen's Compensation Act for an otherwise compensable injury if it is shown that the employee knowingly and wilfully made a false representation as to his physical condition, the employer relied upon the false represen-

tation, which reliance was a substantial factor in the employment, and there was a causal connection between the false representation and the injury.

All three of the factors must be present in order to bar compensation; if any of the three factors is absent, then the employee is entitled to compensation. *Id.* at 370, 578 S.W.2d at 234.

■ In the present case, the Commission determined that Allen Canning had failed to prove each element of the *Shippers* defense by a preponderance of the evidence — specifically, that appellant failed to prove that appellee knowingly and willfully made a false representation as to his physical condition on his employment application. On the employment application, appellant was asked to describe his general health, and he checked the box stating "good." Appellant was also asked, "Do you have any physical or mental conditions which may limit your ability to perform certain kinds of work?" There is some type of mark through the box stating "no," although appellee denied at the hearing that he checked either "yes" or "no" in response to that question. Nevertheless, the Commission found that even if appellee had checked the box, the question was insufficient in and of itself to prove that appellee knowingly and willfully made a false representation as to his physical condition.

In support of its decision that the *Shippers* defense is inapplicable in this case, the Commission cites *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988), and *Knight v. Indus. Elec. Co.*, 28 Ark. App. 224, 771 S.W.2d 797 (1989). In those cases, this court held that the questions posed to the prospective employees were too general and too broad to support an application of the *Shippers* defense. In *College Club Dairy*, the employment application asked the question, "Do you have any physical defects," and in *Knight*, the question asked, "Do you have any physical condition which may limit your ability to perform the job applied for?" The Commission found that the question asked on the employment application in the present case, "Do you have any physical or mental conditions which may limit your ability to perform certain kinds of work," was essentially the same question asked in *Knight*.

We hold that the question asked on the employment application in the present case was even more broad and general than the question in *Knight* because it also included mental conditions

and asked if the physical or mental conditions limited his ability to perform "certain kinds of work," without specifying the type of work. Jody Yoakum, appellant's director of claims services, testified that as a general rule, people hired at the plant were not necessarily interviewing for a specific position, but for a general-labor position, and Yoakum could not say what appellee was told regarding what his job duties or assignment would be at the time he filled out his application. Furthermore, Yoakum testified that it was only after an employee was hired that the employee was asked to fill out a data card listing any conditions that would limit the employee's ability to perform any type of work. If this inquiry was not made until after appellee was hired, then appellant cannot argue that it relied upon the "false representation" and that it was a substantial factor in the employment decision, another requirement of the *Shippers* defense. We find no error in the Commission's determination that the *Shippers* defense is inapplicable in the present case.

Appellee cross-appeals the amount of temporary-total disability awarded him by the Commission, contending that he remained in his healing period after July 18, 2003, and therefore should be awarded temporary-total disability from July 8, 2003, until a date yet to be determined. We hold that there was no error in the Commission's determination that appellee's temporary-total disability benefits terminated as of July 18, 2003.

 In order to be entitled to temporary-total disability benefits, a claimant must prove by a preponderance of the evidence that he remained in his healing period and suffered a total incapacity to earn wages. *Arkansas State Highway & Transp. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). In the present case, the Commission found that appellee failed to prove by a preponderance of the evidence that he was totally incapacitated from earning wages after July 18, 2003, and there is substantial evidence to support this finding. In arriving at this conclusion, the Commission relied upon several factors that were set forth in its opinion — the physical therapist's August 8, 2003 discharge report that stated that as of July 18, 2003, the last day appellee was seen, "significant improvement was noted"; the fact that appellee filed for and began receiving unemployment compensation benefits shortly after July 18, 2003; appellee's own testimony at the hearing that he believed that he could return to some type of work at Allen Canning and that he had made several job inquiries; and the fact that there was no medical evidence indicating that appellee was

totally incapacitated from working after July 18. Obviously, if appellee was applying for jobs, he was holding himself out as able to work. All of these findings support the Commission's decision that appellee was not totally incapacitated from earning wages after July 18, 2003, and therefore was no longer entitled to temporary-total disability benefits.

■ Furthermore, as pointed out by appellant, appellee's receipt of unemployment compensation benefits makes him ineligible to receive temporary-total disability benefits. Arkansas Code Annotated section 11-9-506(a) (Repl. 2002) provides in pertinent part that "no compensation in any amount for temporary total disability shall be payable to an injured employee with respect to any week for which the injured employee receives unemployment benefits under the Arkansas Employment Security Law." The Commission's determination that appellee's temporary-total disability benefits terminated as of July 18 is also affirmed.

Affirmed on direct appeal and on cross-appeal.

GRIFFEN and ROAF, JJ., agree.