Barbara BINGLE *v.* QUALITY INN;
Union Standard Insurance Co.

CA 04-1142                                             241 S.W.3d 271

Court of Appeals of Arkansas
Opinion delivered October 11, 2006

*Claudell Woods,* for appellant.

*Kenneth A. Olsen,* for appellees.

KAREN R. BAKER, Judge. Appellant Barbara Bingle challenges the decision of the Workers' Compensation Commission finding that appellant was able to return to work on August 14, 2001, and that appellees Quality Inn and Union Standard Insurance Co.'s refusal to pay appellant's medical bills and attorney's fees previously ordered was not willful. We originally ordered rebriefing in this case in No. CA04-1142 (Apr. 5, 2006). On resubmission, we reverse in part and affirm in part.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Crossett Sch. Dist. v. Gourley,* 50 Ark. App. 1, 899 S.W.2d 482 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.,* 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown,* 53 Ark. App. 30, 917 S.W.2d 550 (1996). The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Keller v. L.A. Darling Fixtures,* 40 Ark. App. 94, 845 S.W.2d 15 (1992).

The Commission also has the duty of weighing the medical evidence as it does any other evidence. *Roberson v. Waste Mgmt.,* 58

Ark. App. 11, 944 S.W.2d 858 (1997). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall,* 79 Ark. App. 129, 84 S.W.3d 878 (2002). When the Commission denies benefits upon finding that the claimant failed to meet his burden of proof, the substantial evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for denial of the relief. *Cooper v. Hiland Dairy,* 69 Ark. App. 200, 11 S.W.3d 5 (2000). In addition, the Commission cannot arbitrarily disregard any witness's testimony. *Freeman v. Con-Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001).

Appellant Barbara Joyce Bingle, age forty-four, was employed by appellee Quality Inn as a housekeeper when she sustained an accidental injury to her right knee on May 30, 1999. On August 12, 1999, Dr. Bud Dickson identified the injury as traumatic pre-patellar bursitis and performed an excision on the right knee. Appellant returned to light-duty work on or about August 25, 1999.

In an opinion filed February 2, 2000, an administrative law judge found that appellant proved she sustained an injury to her right knee on May 30, 1999; that appellant was entitled to temporary total disability compensation from August 12, 1999, through September 13, 1999; and that appellant proved she was entitled to medical treatment and referrals from Dr. Bud Dickson. No appeal was taken from the administrative law judge's opinion.

Appellant continued to follow up with Dr. Dickson. Dr. James Mulhollan performed arthroscopic surgery on appellant's right knee on April 11, 2001. Dr. Mulhollan indicated that appellant would return to restricted work on April 16, 2001, and then to full work duties on April 23, 2001. However, on April 28, 2001, appellant sought emergency treatment, and the emergency physician took her off work that date until seen by Dr. Mulhollan.

April 28, 2001, was the last day of work for appellant. A pre-hearing order was filed with the Commission on June 26, 2001. Appellant claimed that she continued to require medical treatment, that her authorized treating physician had declined to provide further treatment, and that she was entitled to a change of treating physician in close proximity to her residence. She also stated that she had been rendered totally disabled since the April 28, 2001 emergency-room visit and that appellees were liable for

the emergency-room treatment as well as temporary total disability benefits and change of treating physician all of which had been controverted. Appellees contended that they were providing reasonably necessary medical treatment through Dr. Mulhollan.

Subsequently, appellant presented on her own to Dr. D'Orsay Bryant, III, at Tri-State Orthopaedic and Sports Medicine Center, on July 10, 2001. Dr. Bryant performed arthroscopic surgery on appellant's knee on July 13, 2001. On August 14, 2001, Dr. Bryant wrote that appellant was doing well with no complaints and that follow-up for the patient would be "as needed."

On October 30, 2001, the administrative law judge filed an opinion stating that appellant was temporarily totally disabled for the period beginning April 29, 2001, and continuing through the end of her healing period or until she returned to work, whichever occurred first. He also found that medical treatment for Dr. Bryant was reasonably necessary, and determined that appellees were to pay all reasonable hospital and medical expenses arising out of the injury of May 30, 1999. In an opinion dated August 6, 2002, the Commission affirmed the award of additional benefits and designation of Dr. Bryant as appellant's authorized treating physician.

Another pre-hearing order was filed with the Commission on February 11, 2003. Appellant claimed that she remained within her healing period and was entitled to continued temporary total disability compensation. She further asserted that appellees failed and refused to pay for her reasonably necessary medical treatment as previously ordered and that appellees' failure to comply with those orders had resulted in her being denied access to reasonably necessary medical treatment by her authorized physician. These claims were based on appellant's assertion that Dr. Bryant refused to see her for treatment until her accumulated charges had been paid.

Appellees acknowledged that two bills had not been paid, but that those bills had been placed in line for payment along with a 20% penalty and attorney's fee. They explained that their failure to pay these bills was a result of a serious illness by the adjuster handling the claim. Although the adjuster continued to work during the treatment of her illness prior to her passing, she became increasingly disoriented. These two bills had been overlooked during that time, but all other bills had been paid. When appellee Union Standard Insurance Company realized that the illness of the adjuster required another individual to work the files originally

assigned to her, it hired Ms. Hill, at least in part, to begin working these numerous files. Ms. Hill testified that she received these files in December 2002, and that appellant's file was included in that distribution. She described the difficult process.required to determine which bills had been paid. This process included sorting through the duplicate bills, contacting the individual physicians' offices, determining correct balances, and maintaining contact with appellant's attorney. Ms. Hill was unable to identify the exact date that she began working appellant's file because of the number of files she was processing; however, it was undisputed that the two overlooked bills were paid on February 12, 2003. One bill was submitted by the physician on July 24, 2001, and the other was submitted on September 4, 2001, from the facility where the surgery was performed.

Despite the delay in the payment of these two submitted charges, the Commission found that appellees' failure to timely pay the two bills was neither willful nor intentional to require the imposition of the 36% penalty pursuant to Arkansas Code Annotated section 11-9-802(e) (Repl. 2002). Although the delay in payment was significant, the Commission found that the Commission's opinion affirming the administrative law judge's original award was not final until September 6, 2002, after the thirty days allowed for an appeal had expired. *See* Ark. Code Ann. § 11-9-711(b) (Repl. 2002). Pursuant to Arkansas Code Annotated section 11-9-802(c), appellees had fifteen (15) days to pay the award of temporary total disability. They did not do so, but paid a 20% penalty pursuant to the statute. The Commission stated that although reasonable minds could find that appellees' actions in this case were negligent, that the 36% statutory penalty was not warranted because the record did not show that appellees acted willfully and intentionally in failing to pay the medical bills submitted to them.

█ The issue before us is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr., supra.* Nothing in the record indicates that appellees intentionally structured the processing of appellant's claims to delay the payment of the two medical bills. To the contrary, the testimony specifically set forth appellees' acknowledgment that the illness of the adjuster was affecting the

processing of claims including appellant's file and that steps were taken to address the delays. Appellees also ensured on their own initiative that the 20% penalty was paid. Accordingly, we hold that substantial evidence supports the Commission's disposition of the contempt issue and affirm that portion of the decision.

However, we must reverse the Commission's finding that appellant was entitled to temporary total disability only through August 14, 2001. In reaching its decision, the Commission noted that Dr. Bryant assigned a permanent anatomical rating and opined that appellant had reached maximum medical improvement on April 15, 2003, not August 14, 2001. The Commission reasoned that appellees implicitly contended that appellant reached the end of her healing period on August 14, 2001, noting that Dr. Bryant testified that the healing time for surgery would be four to six weeks and that the time period of July 13, 2001 through August 14, 2001 closely corresponded with the projected healing time for surgery. It further dismissed appellant's assertion that she was unable to timely return to Dr. Bryant because of appellees' failure to timely pay the outstanding balance at his office stating that the record supported the conclusion that she did not try to see her treating physician until her knee was painful and swollen in February 2002.

On appeal to this court, appellees argue that the Commission properly inferred from Dr. Bryant's constructive release of appellant that she had reached the end of her healing period, or that it was imminent, when he saw her on August 14, 2001. Appellees cite no law supporting the premise that our statutory or case law regarding the provision of workers' compensation benefits recognizes the constructive release of a patient or the inference from such a release that the patient has reached the end of her healing period. Perhaps one practical effect of a failure to timely pay outstanding medical bills could be a delay in obtaining the statutorily required medical opinion identifying the date of maximum medical improvement and assigning an impairment rating.

■ Nevertheless, our review of the workers' compensation statutes and their interpretation by case law leads us to reject any suggestion that a party may prove or disprove the end of a healing period through a constructive release of a patient. Section 11-9-102(16)(B) of Arkansas Code Annotated (Repl. 2002) provides that medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of

medical certainty. The legislative declaration found in section 11-9-1001 admonishes that any liberalization or broadening or narrowing of the extent to which any physical condition or injury should be excluded from or added to coverage by the law is the sole province of the Arkansas legislature.

While the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict, *see Poulan Weed Eater, supra*, the Commission cannot arbitrarily disregard any witness's testimony. *See Freeman v. Con-Agra Frozen Foods, supra*. In this case, the Commission rejected Dr. Bryant's medical opinion assigning an impairment rating and finding maximum medical improvement on the date of April 15, 2003, and substituted that medical opinion with its own finding of a constructive release of the patient. Neither the Commission nor this court has the authority to extend or limit coverage by finding a constructive release when the statute specifically requires a medical opinion regarding impairment and compensability to be within a reasonable degree of medical certainty. Without this authority, the Commission's substitution of the medical opinion with its own finding of a constructive release was arbitrary. Accordingly, we must reverse and remand on that issue.

Reversed and remanded in part; affirmed in part.

GLADWIN and ROBBINS, JJ., agree.