Carl D. KING  *v.*  PEOPLEWORKS, Zurich American
Insurance Company, Teletouch Communications, Inc.,
& Federal Insurance Company

CA 06-366 244 S.W.3d 729

Court of Appeals of Arkansas
Opinion delivered December 6, 2006

*Baxter, Jensen, Young & Houston,* by: *Terence C. Jensen,* for appellant Carl D. King.

*Rieves, Rubens & Mayton,* by: *Michael R. Mayton* and *Michael C. Stiles,* for appellees/cross-appellees Peopleworks and Zurich American Insurance Company.

*Huckabay, Munson, Rowlett, & Moore, P.A.*, by: *Jarrod Parrish* and *Carol Lockard Worley*, for appellees/cross-appellants Teletouch Communications and Federal Insurance Company.

SAM BIRD, Judge. This case arises from an opinion of the Workers' Compensation Commission issued on December 19, 2005. The Commission found that Carl D. King sustained a compensable aggravation to his back while working for Teletouch Communications, Inc. on February 7, 2001; that Teletouch was liable for reasonably necessary medical treatment provided in connection with the aggravation; that King was entitled to temporary total disability compensation from September 7, 2001 until November 10, 2001; and that Teletouch was liable for the compensability of the temporary total disability. King appeals the Commission's decision and Teletouch cross-appeals, each raising one point. A third party in this case is appellee and cross-appellee Peopleworks, King's former employer who had accepted compensability of a back injury that King sustained on December 15, 1999.

King contends that the Commission erred in finding that he was not entitled to temporary total disability benefits after November 10, 2001, the date on which he began drawing unemployment benefits. Teletouch contends that substantial evidence does not support the Commission's finding that on February 7, 2001 King suffered an aggravation rather than a recurrence of a compensable injury sustained on December 15, 1999. Peopleworks contends that substantial evidence supports the Commission's findings that King was not entitled to temporary disability benefits after November 10, 2001 and that he sustained an aggravation to his 1999 injury on February 7, 2001. Alternatively, Peopleworks contends that King's latest back problems were traceable to a chronic back condition from the late 1980s. We reverse and remand on direct appeal; we affirm on cross appeal.

The following stipulations and undisputed facts, presented at a hearing before the administrative law judge on October 7, 2004, are pertinent to the issues now before us. In October 1990 King underwent a laminectomy at L5-S1 after sustaining a back injury while working for an employer who is not involved in the present case. In 1997 King began working for Peopleworks, and in December 1999 he sustained the back injury that Peopleworks accepted as compensable. Peopleworks paid for some medical benefits and for a laminotomy at L4-5 performed by Dr. Wilbur Giles on June 30, 2000. King missed no work due to his back

injury until the time of his surgery; he was off work after surgery and received temporary total disability benefits until reaching the end of his healing period no later than August 21, 2000, and returning to light-duty work on August 22, 2000. King's employment continued after Teletouch purchased Peopleworks in September 2000. Dr. Giles released King to full duty on October 22, 2000, and he worked until Teletouch terminated him on September 7, 2001.

King requested additional treatment after the incident of February 7, 2001, turning first to Peopleworks and then to Teletouch. Each employer controverted and denied the claim, leading to the litigation that has resulted in the present appeal.

### Temporary Total Disability

King contends on appeal that the Commission erred in determining that he was not entitled to temporary total disability benefits after November 10, 2001, when he began receiving unemployment benefits. He argues that the law and evidence do not support a finding that he was precluded from receiving temporary total disability benefits after the thirty-nine weeks that he received unemployment benefits. He asserts that the Commission's opinion should be reversed in part, allowing him to draw temporary total disability benefits after his receipt of unemployment compensation benefits ended. We agree that the Commission erred. For the reasons explained herein, we reverse and remand for a determination of whether King was entitled to additional temporary total disability benefits after he began receiving unemployment benefits.

The Commission determined that King entered a healing period for an aggravation as the result of an independent incident occurring on February 7, 2001, but was not totally incapacitated to earn wages at that time because he continued to work. In determining the time period for which King was entitled to temporary total disability compensation, the Commissioned reasoned:

> [Teletouch] terminated the claimant's employment on or about September 7, 2001.... The record demonstrates that the claimant began receiving unemployment compensation on or about November 10, 2001. A claimant's receipt of unemployment benefits makes him ineligible to receive temporary total disability compensation. *See*, Ark. Code Ann. § 11-9-506; *Allen Canning Company v. Woodruff*, CA 04-1364 (Ark. App. 9-7-2005).

The Commission found that King was entitled to temporary total disability compensation from September 7, 2001 until November 10, 2001 and that Teletouch was liable for this compensation.

Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. *Ark. State Highway Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). The healing period is "that period for healing of an injury resulting from an accident." Ark. Code Ann. § 11-9-102(12) (Supp. 2005). Whether the healing period has ended is a factual determination to be made by the Commission. *Ketcher Roofing Co. v. Johnson*, 50 Ark. App. 63, 901 S.W.2d 25 (1995). Arkansas Code Annotated section 11-9-506 (Repl. 2002) further specifies:

*Limitations on compensation — Recipients of unemployment benefits*

(a) Any other provisions of this chapter to the contrary notwithstanding, no compensation in any amount for temporary total, temporary partial, or permanent total disability shall be payable to an injured employee with respect to any week for which the injured employee receives unemployment insurance benefits . . . .

(b) Provided, however, if a claim for temporary total disability is controverted and later determined to be compensable, temporary total disability shall be payable to an injured employee with respect to any week for which the injured employee receives unemployment benefits but only to the extent that the temporary total disability otherwise payable exceeds the unemployment benefits.

Teletouch asserts that King failed to establish that he remained in his healing period and totally incapable of earning wages after his unemployment ran out. Teletouch points to King's testimony that he was physically capable of doing the work when he was terminated, that he was not planning on quitting due to his back problems, and that he indicated on his application for unemployment benefits that he was ready, willing, and able to go to work. Teletouch asserts that King's notation of "back problems" on the unemployment application, although establishing that he wanted to avoid jobs that required heavy lifting, does not establish that he remained in a healing period and does not indicate that he was totally incapacitated.

Similarly, Peopleworks asserts that King failed to establish that he was totally and completely incapacitated to earn wages and that he was within his healing period. Peopleworks essentially

repeats the arguments of Teletouch regarding King's testimony that he was capable of working at the time of his termination. Additionally, Peopleworks argues that King never re-entered a healing period after his release to full-duty, especially in connection with his 1999 compensable injury, before the incident of February 7, 2001.

In *Allen Canning Co. v. Woodruff*, 92 Ark. App. 237, 212 S.W.3d 25 (2005), this court found substantial evidence to support the Commission's finding that the claimant failed to prove that he was totally incapacitated from earning wages after July 18, 2003. We wrote:

> In arriving at this conclusion, the Commission relied upon several factors that were set forth in its opinion-the physical therapist's August 8, 2003 discharge report that stated that as of July 18, 2003, the last day appellee was seen, "significant improvement was noted"; the fact that appellee filed for and began receiving unemployment compensation benefits shortly after July 18, 2003; appellee's own testimony at the hearing that he believed that he could return to some type of work at Allen Canning and that he had made several job inquiries; and the fact that there was no medical evidence indicating that appellee was totally incapacitated from working after July 18. Obviously, if appellee was applying for jobs, he was holding himself out as able to work. All of these findings support the Commission's decision that appellee was not totally incapacitated from earning wages after July 18, 2003, and therefore was no longer entitled to temporary-total disability benefits.
>
> Furthermore, as pointed out by appellant, appellee's receipt of unemployment compensation benefits makes him ineligible to receive temporary-total disability benefits. Arkansas Code Annotated section 11-9-506(a) (Repl. 2002) provides in pertinent part that "no compensation in any amount for temporary total disability shall be payable to an injured employee with respect to any week for which the injured employee receives unemployment benefits under the Arkansas Employment Security Law." The Commission's determination that appellee's temporary-total disability benefits terminated as of July 18 is also affirmed.

92 Ark. App. at 246-47, 212 S.W.3d at 31.

We agree with King that *Allen Canning Co., supra*, does not stand for the proposition that a claimant's receipt of unemployment benefits acts as a complete bar to temporary total disability

benefits when the receipt of unemployment benefits ends. The *Allen* court's reference to Ark. Code Ann. § 11-9-506 followed our holding that substantial evidence supported the Commission's finding that appellee failed to prove that he was totally incapacitated from earning wages after he began receiving unemployment benefits.

In the present case, King testified that people helped him with his work at Teletouch after the February 7, 2001 incident, and he stated that the reason he was given for his termination on September 7, 2001 was that he was untrainable and had missed so much time from work. The Commission, however, did not determine whether King was or was not totally incapable of earning wages. Furthermore, although the Commission found that King entered a healing period on February 7, 2001, it did not address whether the healing period had ended.

Subsection (b) of Ark. Code Ann. § 11-9-506 provides that when a claim for temporary total disability is controverted and later determined to be compensable, temporary total disability shall be payable to an injured employee with respect to any week for which the employee receives unemployment benefits to the extent that the temporary total disability otherwise payable exceeds the unemployment benefits. King's claim falls within this subsection because it was controverted in its entirety but was later determined to be compensable for the time period September 7 through November 10, 2001.

Under the terms of the statute, and if King remained within his healing period and was totally incapacitated from earning wages, he was entitled to receive temporary total disability benefits to the extent that they exceeded his unemployment compensation from September 7 through November 10, 2001. Furthermore, he was entitled to receive full benefits after his receipt of unemployment compensation ended if he remained in his healing period and suffered a total incapacity to earn wages. Therefore, as a matter of law, the Commission erred in determining that King was not entitled to temporary total disability compensation once he began receiving unemployment benefits.

We reverse the Commission's finding that King's entitlement to temporary total disability benefits stopped on November 10, 2001, merely because he began receiving unemployment benefits on that date. The case is remanded to the Commission for a factual determination regarding whether King remained within

his healing period and suffered a total incapacity to earn wages after his receipt of unemployment compensation began. Should the Commission find that King indeed remained within his healing period and was totally incapacitated from earning wages after November 10, 2001, the Commission must also determine the amount of benefits to be awarded him under Ark. Code Ann. § 11-9-506(b).

### Aggravation of Pre-Existing Back Condition

Teletouch contends on cross appeal that substantial evidence does not support the Commission's finding that King sustained an aggravation rather than a recurrence of his compensable 1999 injury. We do not agree.

A recurrence exists when the second complication is a natural and probable consequence of the prior injury; it is not a new injury but merely another period of incapacitation resulting from a previous injury. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996); *Atkins Nursing Home v. Gary*, 54 Ark. App. 125, 923 S.W.2d 897 (1996). An aggravation is a new injury resulting from an independent incident and, being a new injury with an independent cause, must meet the requirements for a compensable injury. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). "Compensable injury" is defined, in part, at Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2005):

> An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of his employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

Furthermore, a compensable injury must be established by medical evidence, supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). Objective findings are those findings which cannot come under the voluntary control of the patient. *Id.* § 11-9-102(16)(A)(i).

Regarding the incident of February 7, 2001, the Commission noted King's testimony that he was in the process of checking a transmitter for Teletouch, that he squatted down and opened his laptop, that he had a severe pain in his back and right side when he started to get up, and that it knocked him back down to the ground. Further examining the evidence, the Commission wrote:

The Full Commission finds that this incident [of February 7, 2001] was an aggravation/accidental injury. We note the physical therapist's finding on March 5, 2001, "Patient presents with a decreased lumbar lordosis." *Dorland's Illustrated Medical Dictionary,* 28th Ed., defines "lordosis" in part as an "abnormally increased curvature" of the spine. The claimant credibly testified that his back was "crooked" following the February 7, 2001 specific incident.

The Commission's opinion cited *Estridge v. Waste Management,* 343 Ark. 276, 281, 33 S.W.2d 167, 171 (2000), where our supreme court held, "Appellant's treating physician found straightening of the curve in the spine, which is a sign that is normally associated with muscle spasm in the straightened area. This finding *is* objective evidence of injury with no evidence to the contrary." Also noting the holding of *Continental Express, Inc. v. Freeman,* 339 Ark. 142, 4 S.W.3d 124 (1999), that muscle spasms reported by a physician or physical therapist can constitute objective medical findings, the Commission determined that "in the present matter . . . a physical therapist's notation of 'decreased lumbar lordosis' is an objective medical finding establishing a new injury."

Teletouch contends on appeal that the Commission erroneously based its ruling "upon the presence of a decrease in the lordotic curve and not any comparison of the diagnostic studies performed before and after appellant's surgery in June of 2000." Rather than disputing the presence of lordosis and muscle spasm subsequent to the February 2001 incident, Teletouch argues that the evidence is not dispositive because King had spasms before the date of the incident.

Teletouch points out that the decision in *Estridge, supra,* did not involve a determination of whether the claimant suffered a recurrence or aggravation. It asserts that the present issue is whether King sustained a distinct and new injury, rather than whether there was objective evidence of injury, and that the Commission erroneously found lordosis to be evidence of a new injury separate and apart from King's previous back problems. It argues that King experienced an increased need for medical treatment due to a recurrence of the condition for which he had continued to receive treatment until a month before the incident on February 7, 2001. It notes that King had scoliosis, that medical records such as physician's notes of January 2, 2001, reported King's "chronic low back pain," and that King testified that his back problems continued and remained in the same location as

before the incident of February 2001. It points to medical evidence that King suffered from problems in both sides of his body after surgery in June 2000, and it asserts that fair-minded people could not conclude that appellant suffered a bulging disc in his back and decreased lumbar lordosis as a result of "standing up from the kneeling position." Teletouch concludes that King's decreased lordosis is directly attributable to muscle spasms he suffered prior to and during the course of treatment he previously received at cross-appellee Peopleworks' expense.

Peopleworks responds that substantial evidence proves that King sustained either a new injury or an aggravation to a pre-existing injury on February 7, 2001; it contends alternatively that all of King's present back problems are traceable to his long-standing chronic back condition that arose in the late 1980's. Peopleworks argues that Teletouch's argument relies considerably on King's subjective complaints of pain and that his testimony was contradicted by reliable and consistent objective medical evidence. Peopleworks suggests that the physicality of King's job, particularly after Teletouch bought out the business in September 2000, "began to wear and tear at King's body."

Finding that King sustained a compensable aggravation resulting from an independent incident occurring on February 7, 2001, the Commission wrote:

> The independent incident caused physical harm to the claimant's body, the independent incident arose out of and in the course of the claimant's employment with [Teletouch], and the incident required medical services. The independent incident was identifiable by time and place of occurrence, and the incident was established by medical evidence supported by objective findings.

In reviewing decisions of the Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms the decision if it is supported by substantial evidence. *Clairday v. Lilly Co.*, 95 Ark. App. 94, 234 S.W.3d 347 (2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. It is the Commission's function to weigh the medical evidence and assess the credibility and weight to be afforded to any testimony. *Id*.

The question on appeal is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Com-

mission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005). Here, we do not agree with Teletouch that the Commission erroneously interpreted *Estridge, supra,* nor do we agree that the Commission ignored evidence indicating that King's injuries were merely a continuation of his previous back problems.

We do not agree with Teletouch that reasonable minds could not conclude that King's bulging disc and decreased lumbar lordosis resulted from the incident. While not challenging the presence of decreased lumbar lordosis and spasms subsequent to February 7, 2001, Teletouch asserts that the decreased lordosis was attributable to previous muscle spasms rather than to the incident of February 7, 2001. This was a factual determination for the Commission to decide after weighing and interpreting the evidence and deciding matters of credibility.

The Commission's review of the evidence included medical records before and after the incident of February 7, 2001; King's testimony, found by the Commission to be credible, that after squatting down and opening his laptop on February 7, 2001, he started to get up and was knocked to the ground by severe pain in his back and right side; his testimony that his back was "crooked" following the severe pain experienced in the incident; and the physical therapist's observation of the decreased lumbar lordosis on March 5, 2001. We hold that this evidence constitutes substantial evidence to support the Commission's conclusion that King suffered a new injury on February 7, 2001, and a compensable aggravation resulting from the independent incident.

Reversed and remanded on direct appeal; affirmed on cross appeal.

GLADWIN and ROAF, JJ., agree.