Cite as 2025 Ark. App. 67

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-289

| | | |
|---|---|---|
| | | **Opinion Delivered** February 5, 2025 |
| CHARLES LAWLESS | | APPEAL FROM THE ARKANSAS |
| | APPELLANT | WORKERS' COMPENSATION |
| | | COMMISSION |
| V. | | [NO. H106661] |
| | | |
| AT&T TECHNICAL SERVICES COMPANY, INC.; OLD REPUBLIC INSURANCE COMPANY; AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Charles Lawless appeals from an opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellees AT&T Technical Services Company, Inc. (AT&T), and Sedgwick Claims Management Services, Inc. (Sedgwick). The Commission found that appellant was not entitled to additional temporary total-disability (TTD) benefits. On appeal, appellant contends that substantial evidence does not support the Commission's decision. We affirm.

I. *Relevant Facts*

Appellant was employed by AT&T at a worksite in Fort Smith, Arkansas. It is undisputed that appellant sustained a compensable neck injury on May 28, 2021, while

trying to hold a door with his right arm and carrying eight laptops into a building. On January 5, 2022, appellant underwent neck surgery by Dr. Gannon Randolph, an orthopedic surgeon. Approximately eight weeks later, on February 28, 2022, Amanda Hawes, PA-C,[1] from the same clinic as Dr. Randolph, released appellant to return to work with the following light-duty restrictions: "He needs to avoid lifting anything heavier than 20lbs and avoid working longer than 4 hours a day on a computer or talking on the phone." Thereafter, on April 5, 2022, P.A. Hawes released appellant to return to work on April 5, 2022, without any restrictions. During a follow-up visit on April 21, 2022, Dr. Randolph noted that appellant's "radicular symptoms have completely resolved but that he is still struggling with some left-sided neck pain" after a recent fall.

Appellant did not return to work for AT&T, and it is undisputed that appellees stopped paying appellant TTD benefits after May 1, 2022, relying on the medical report that appellant had been released back to work without any restrictions. Appellant applied for unemployment insurance benefits on May 18, 2022, and in his application, appellant checked the box that he was immediately available for full-time work and did not have "any disabilities that [would] limit [his] ability to perform [his] normal job duties." Appellant received unemployment insurance benefits from May 28, 2022, until September 12, 2022.

On July 19, 2022, appellant's counsel wrote a letter to appellees' counsel stating that appellant had contacted AT&T but was not allowed to return to work. In a second letter

---

[1]"PA-C" describes a Physician's Assistant and Physician's Assistant Amanda Hawes is hereafter referred to as "P.A. Hawes."

2

dated July 22, 2022, appellant's counsel demanded that appellant be provided a job or that his TTD benefits be reinstated.

On July 21, 2022, Dr. Randolph gave appellant a "trigger point injection." Dr. Randolph also noted that he discussed with appellant that at his current level, he would normally let a patient "go back to play in the NFL so [he] really [did] not have any restrictions for him." Dr. Randolph stated that he planned to see appellant in another six months, at which point appellant would have reached maximum medical improvement (MMI).

Appellant exercised his right to have a change of physician, and appellant began seeing Dr. Kyle Mangels on November 21, 2022. Dr. Mangels noted that appellant complained of left-side neck pain and vocal-cord issues. He recommended that appellant needed to have X-rays of his neck, another cervical MRI, and a vocal-cord check. He noted that appellant "is retired now and not working." In his physician's recommendation report, Dr. Mangels issued a temporary weightlifting restriction of forty pounds and noted that appellant had not reached MMI but was not temporarily totally disabled.

Appellant's January 15, 2023, cervical MRI revealed the following impressions:

1. Anterior fusion C5–6 level.

2. Degenerative disc disease with posterior spurring and disc bulging C6/7 level with right foraminal narrowing.

3. Small protrusion C3–4 with no central or foraminal narrowing.

On March 8, 2023, Dr. Mangels thought appellant might need another neck surgery based on the MRI results. However, he wanted to wait until appellant was able to have his

vocal cord checked, which was scheduled the following month. Dr. Mangels noted that appellant was on the same "work restrictions" as before and that he could "lift up to 40 pounds and alternate sitting and standing as required by the patient." He further noted that those restrictions were temporary and were "the same as before."

Dr. Michael Gwartney, an otolaryngologist in Fort Smith, saw appellant on April 25, 2023. Dr. Gwatney opined that appellant had "pretty good vocal cord motion" and "pretty good glottic closure." Dr. Gwartney did not think appellant needed surgery for his vocal cord and did not think there was "any significant risk" to appellant's vocal cord if Dr. Mangels wanted to perform a second surgery on that side of appellant's neck.

Appellant filed a claim for additional TTD benefits, and the appellees controverted appellant's entitlement to any additional TTD benefits after May 1, 2022, when he was released from his treating physician's care (then, Dr. Randolph) without any work restrictions. A hearing before the ALJ was held a year later on May 23, 2023. Appellant testified that he was injured on May 28, 2021, when he was trying to hold a door open with his right arm and carry eight laptops into a building. He said he felt something like an electric shock that went down his shoulder into his arm. He finished the task he had been assigned and then went home "to fix it" himself before he eventually received surgery on January 5, 2022. Appellant testified that when he was aware that he was released to return to work, he contacted AT&T and was told that he had been removed from the contract. He was instructed to go to the AT&T job search site, but appellant stated there were no jobs listed on that site for which he felt he was qualified. Appellant further stated that he looked

4

for other jobs but did not find anything. Appellant admitted that he drew unemployment for three months and conceded that there might be a week that he did not check with as many possible employment opportunities as he was supposed to.

Appellant argued that he is limited in what he can do as a result of his injury and his surgery. Hs said he has a diminished range of motion when looking up or turning his head side to side; his voice had changed; and he was experiencing pain and discomfort at night to the point that he was not sleeping. He did not believe he could perform the job that he had at the time of the accident in his current physical condition because it involved watching computer screens, talking, and sitting at a keyboard, all of which he said were either painful or difficult.

On cross-examination, appellant admitted he had testified in his deposition that his numbness and shoulder pain had been resolved after surgery. However, appellant denied telling Dr. Mangels that he is retired and claimed that he had told Dr. Mangels only that he had turned sixty-five at the time. Appellant reiterated that he was still looking for a job, even though he was also receiving 50 percent VA disability benefits. Regarding appellant's previous position with AT&T, appellant admitted he knew the position was part of a subcontract that AT&T had with contractor, Inserso Corporation, for the federal government in Fort Smith. Appellant testified that he understood that the job had moved from Fort Smith to a Little Rock location.

Appellant clarified that he spoke with his previous supervisor with AT&T, Carlos Colon, about going back to work in August 2021; however, that conversation happened

before he was released to work in April 2022. Appellant stated that after he was released to work, he was given a two-week period to look for other positions with AT&T on its job website.

Appellant testified that he was a "Systems Engineer II"; he ran network security and had migrated entire systems onto the Cloud; worked for Homeland Security with U.S. Department of Defense top-secret clearance; and worked with computers, printers, and scanners. Although appellant testified at the hearing that he could not do the job he had with AT&T, appellant admitted that during his deposition, he had testified that he could still do his job. He further admitted that he said he had located some jobs out of state and thought at the time of his deposition that he had several job prospects. He did not remember saying in his deposition that there were positions available in Cincinnati and Washington, D.C., but he conceded that he did not want to move to Washington, D.C. Appellant agreed that his job did not require him to lift heavy servers or printers by himself and that he said in his deposition that a laptop was typically the heaviest item he had to lift. Finally, appellant admitted that he was not "totally incapacitated from earning wages" since the previous year as he had job prospects and was drawing unemployment.

After appellant rested his case, appellees called Carlos Colon, appellant's direct supervisor at AT&T. He explained that AT&T was a subcontractor with Inserso Corporation, and Inserso had the contract with the federal government for work in Fort Smith. Colon testified that appellant's position was moved from Fort Smith to Little Rock toward the end of summer in 2021, long before appellant was able to return to work. Colon

remembered having a conversation with appellant at that time and that he told appellant about the position moving to Little Rock and also told appellant to apply for other jobs on the AT&T website. Colon testified that while appellant was unable to work due to his medical treatment, the position in Little Rock had to be filled. Mr. Colon did not recall having contact with appellant in 2022 about him returning to work.

Regarding appellant's previous job, Mr. Colon stated that it required appellant to travel a lot. He said that although appellant had to talk on the telephone at times during his working day, it was not something he expected appellant to do constantly. He was not required to talk on the phone while driving to customer sites.

On cross-examination, Mr. Colon admitted AT&T had not offered appellant any employment in a particular position since he was released to return to work in April 2022. That said, he did not know if anyone had notified him that appellant had been released to return to work. He said that during his last conversation with appellant, it was his impression that appellant was not interested in continuing to work for AT&T. Mr. Colon did, however, acknowledge that the conversation took place in the summer of 2021 when appellant was still under active medical treatment.

On redirect examination, Mr. Colon said that there were thousands of job openings with AT&T, but as far as he knew, appellant did not contact him or AT&T about going back to work. He said that it is easy to look for jobs on the website.

Appellant was re-called as a witness. He testified that he contacted AT&T after he had been released to work, but he had not been offered to return to work.

After the hearing, the ALJ filed an opinion on August 16, 2023, that made the following relevant findings:

As set out above, the only issue that was adjudicated at the hearing was claimant's entitlement to TTD or TPD benefits from May 1, 2022, until a date to be determined. Respondents accepted claimant's cervical spine injury and paid TTD benefits until May 1, 2022. As a cervical spine injury is an unscheduled injury, claimant must prove by a preponderance of the evidence that he remains within his healing period and suffers a total incapacity to earn wages in order to receive TTD or TPD benefits, *Allen Canning Co. v. Woodruff*, 92 Ark. App. 237, 212 S.W.3d 25 (2005). As set out above, claimant's contention is that he had not reached MMI when he was released to return to full duty, and because AT&T did not allow him to return to work, he is entitled to TTD or TPD benefits.[1] After reviewing all the documentary evidence and considering the testimony, I agree with claimant that he had not reached MMI when he was released to full duty, but I disagree that he is entitled to TTD or TPD from May 1, 2022, through May 23, 2023.

Taking the second part of claimant's argument first, the job claimant had in Fort Smith with AT&T no longer exists: I found Mr. Colon to be a credible witness on this point; claimant did not dispute that the position he held in Fort Smith had moved to Little Rock. As both witnesses explained, AT&T was a subcontractor with Inserso, who in turn had a contract with the United States Department of Homeland Security. On May 4, 2021, 24 days before claimant's injury, there was already a plan in place to shift claimant's position to Little Rock. That move was done in August 2021, before claimant had been released to return to work in any capacity. Because of the contract with Inserso, AT&T hired another Systems Engineer while claimant was under doctor's restrictions. I cannot find that AT&T lacked reasonable cause in refusing to return claimant to his previous position, as that position had been filled as per the requirements of its contract with Inserso.

As for the failure to reach MMI, from the period of May 1, 2022, until he saw Dr. Mangels on November 21, 2022, there are no medical records to support claimant's contention that he was unable to work. On the contrary, Dr. Randolph explained in his July 21, 2022, report that claimant was under no restrictions, and tacitly adopted the release forms completed by PA-C Hawes for light duty on February 28, 2022, and full duty on April 5, 2022, as being consistent with his normal protocol. Claimant testified on direct examination that he didn't think he could do the job he had at the time of the accident and on cross-examination, said that he did not believe he was totally incapacitated. Additionally, claimant was actively seeking employment as required by the Arkansas Division of Workplace Services to draw unemployment

benefits, demonstrating that he believed he was able to return to work in some capacity.

At claimant's first visit with him, Dr. Mangels imposed a 40-pound lifting restriction on claimant on November 21, 2022, and stated in his March 8, 2023, report that claimant would need to alternate sitting and standing as required. Perhaps because claimant wasn't working or maybe because he thought claimant was retired, Dr. Mangels did not complete a recommendation report after the March 2023 visit as he did in November 2022; however, he stated that claimant's restrictions "are the same as before." At that time, Dr. Mangels still believed claimant had not yet reached MMI but was not temporarily totally disabled.

Because TTD benefits do not, in all cases, correspond to the healing period, *Cnty. Mkt. v. Thornton*, 27 Ark. App. 235, 770 S.W.2d 156 (1989), claimant cannot solely rely on the statement by Dr. Randolph in July 2022 that he would be at MMI in six months to support his TTD claim. "Temporary-total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages," *Arkansas State Highway Department v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). I see nothing in the medical records that supports a conclusion that claimant had a total incapacity to earn wages after he was released to full duty in April 2022, especially when I consider not only the medical evidence but also "his age, education, experience, and other matters reasonably expected to affect the claimant's earning power." *Breshears*, *Id.* Further, claimant himself denied he had a total incapacity to earn wages (TR. 45); he only testified he could not do his position with AT&T (TR.21)

Because I do not believe AT&T acted unreasonably in filling claimant's position and because the evidence does not support claimant's contention that he was totally incapacitated due to his unscheduled injury from May 1, 2022, until the date of the hearing of this matter, I find that claimant has failed to meet his burden of proving entitlement to TTD or TPD during the period from May 1, 2022, through May 23, 2023.

---

[1]While claimant did not specifically plead that he was entitled to additional TTD/TPD benefits pursuant to A.C.A. § 11-9-505(a)(1), that is the essence of his argument on this point.

Appellant appealed the ALJ's decision, and on January 29, 2024, the Commission, in a majority decision, affirmed and adopted the ALJ's opinion as its own. This appeal

followed. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts

before them could not have reached the conclusions arrived at by the Commission. *Prock, supra.*

## III. *TTD Benefits*

The standard used for determining entitlement to TTD benefits differs depending on whether the injury is a scheduled injury or an unscheduled injury. *City of Fort Smith v. Kaylor*, 2019 Ark. App. 517, 588 S.W.3d 803. In this case, it is undisputed that appellant sustained an unscheduled cervical injury. In order to be entitled to TTD benefits for an unscheduled injury, a claimant must prove by a preponderance of the evidence that he remains within his healing period *and* suffers a total incapacity to earn wages. *Rogers v. Aramark & Sedgwick Claims Mgmt.*, 2022 Ark. App. 507, 657 S.W.3d 196; *Allen Canning Co. v. Woodruff*, 92 Ark. App. 237, 212 S.W.3d 25 (2005); *Ark. State Highway & Transp. Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). When the Commission denies benefits because the claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Adams v. Georgia Pac., LLC*, 2014 Ark. App. 558, 444 S.W.3d 897.

Appellant argues on appeal that he was entitled to additional TTD benefits because he was still in his healing period and was unable to work. He explains that he suffered from voice difficulties, a diminished range of motion, and pain from prolonged sitting in the same position. Even though he claims he cannot work, he alternatively argues that he should be entitled to TTD merely because AT&T failed to offer him a position after he had been released to work. He argues that "it would certainly seem that such a large employer would

11

have been able to find gainful employment for appellant, even assuming that the work release authored by P.A. Hawes accurately assessed the claimant's disability while he was in his healing period." We disagree with appellant's arguments.

Here, the Commission specifically found that although appellant was still in his healing period, "the evidence does not support claimant's contention that he was totally incapacitated due to his unscheduled injury from May 1, 2022, until the date of the hearing of this matter."[2] Despite any contention that appellant suffered a total incapacity to earn wages, the record supports the Commission's decision otherwise. P.A. Hawes released appellant to return to work on April 5, 2022, without any restrictions. Appellant applied for, and began receiving, unemployment insurance benefits starting in May 2022, and on his application for unemployment insurance benefits, appellant checked that he was immediately available for full-time work and did not have "any disabilities that [would] limit [his] ability to perform [his] normal job duties." Then, on July 21, 2022, Dr. Randolph noted that he discussed with appellant that at his current level, he would normally let a patient "go back to play in the NFL so [he] really [did] not have any restrictions for him." Further, after

---

[2]To the extent appellant also argues that the circuit court failed to consider the two-part test as required, we disagree because the circuit court not only cited *Breshears*, *supra*, but also made specific findings as to both parts of the test. Although appellant notes that the Commission also found that it did "not believe AT&T acted unreasonably in filling claimant's position," that finding appears to be in response to the footnote in the opinion stating that appellant was, in essence, claiming "that he was entitled to additional TTD/TPD benefits pursuant to A.C.A. § 11-9-505(a)(1)." Appellant does not argue on appeal that he was entitled to TTD pursuant to Arkansas Code Annotated section 11-9-505(a)(1) (Repl. 2012). Accordingly, we do not discuss it in this opinion.

appellant changed physicians to Dr. Mangels, Dr. Mangels checked the box on the physician's recommendation report that appellant was not temporarily totally disabled. Finally, even appellant admitted at the hearing that he was not "totally incapacitated from earning wages" since he had job prospects and was drawing unemployment during the previous year. These findings support the Commission's decision that appellant was not totally incapacitated from earning wages after May 2022 and, therefore, was no longer entitled to TTD benefits.

The cases appellant cites are distinguishable. *Bingle v. Quality Inn*, 96 Ark. App. 312, 241 S.W.3d 271 (2006), involved a scheduled injury in which a claimant is not required to prove that he or she suffers a total incapacity to earn wages. *See Kaylor*, *supra*. In *Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16, the employer appealed the *award* of TTD benefits and argued below and on appeal that the claimant had effectively refused light-duty work that had been made available to him by getting fired for misconduct. The Commission there had specifically found that termination for misconduct was not a sufficient basis for a finding that the employee refused suitable employment under Arkansas Code Annotated section 11-9-526 (Repl. 2002), which provided that an injured employee who refuses suitable employment shall not be entitled to compensation during the period of his refusal. The supreme court affirmed. These are not the facts of this case.

We instead find that the facts of this case are more akin to those in *Woodruff*, *supra*. Woodruff filed a cross-appeal and argued that he was entitled to TTD benefits. The Commission in *Woodruff* similarly found that he failed to prove by a preponderance of the

13

evidence that he was totally incapacitated from earning wages, and we affirmed.  In arriving at its conclusion, the Commission relied on a therapist's discharge report stating that significant improvement had been noted; the fact that Woodruff had begun receiving unemployment insurance benefits; Woodruff's own testimony that he believed he could return to some type of work; and the fact that there was no medical evidence that Woodruff was totally incapacitated from work.  Most of the same factors exist in this case.  Accordingly, on this record, we hold that there was a substantial basis for the Commission's denial of TTD benefits and affirm.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Newkirk & Jones Law Firm*, by: *David C. Jones*, for appellees.

14